Filed 1/19/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S228049 |
| v. | ) | |
| | ) | Ct.App. 4/1 D060969 |
| BILLY CHARLES WHITE, | ) | |
| | ) | San Diego County |
| Defendant and Appellant. | ) | Super. Ct. No. SCD228290 |
| _____ | ) | |

We must decide whether a jury properly convicted defendant Billy Charles White of both rape of an intoxicated person under Penal Code section 261, subdivision (a)(3), and rape of an unconscious person under Penal Code section 261, subdivision (a)(4)(A), when the convictions were based on the same act.[1] Consistent with our recent holding involving oral copulation, we conclude that "the two statutory subdivisions at issue here describe different offenses, and defendant may properly be convicted of, although not punished for, both." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 535 (*Gonzalez*).)

## I. FACTS AND PROCEDURAL HISTORY

During the night of February 14-15, 2010, defendant had sexual intercourse with a woman in a hotel room after she drank a large amount of vodka with him and others in a bar. She testified she had no memory of leaving the bar; her next

---

[1] All further statutory citations are to the Penal Code.

SEE DISSENTING OPINION.

memory after being in the bar was waking up in a bed in the hotel room with defendant beside her. The evidence supported jury findings that at the time of the intercourse, an intoxicating substance prevented the woman from resisting, that she was unconscious of the nature of the act, and that these circumstances were known to defendant.

Based on these facts, a jury found defendant guilty of violating section 261, subdivision (a)(3) (rape of an intoxicated person; count 1), and section 261, subdivision (a)(4)(A) (rape of an unconscious person; count 2). The trial court sentenced him to state prison for the lower term of three years on count 1 and stayed the sentence on count 2 under section 654. On defendant's appeal, the Court of Appeal held that defendant could not be convicted of both counts. It vacated the conviction on count 2 and otherwise affirmed the judgment. Justice Benke dissented in part, arguing that defendant was properly convicted of both counts.

We granted the Attorney General's petition for review to decide whether defendant could be convicted of both counts.

## II. DISCUSSION

Section 261, subdivision (a), begins: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances . . . ." Then several parts follow. Section 261, subdivision (a)(3), provides: "Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." Section 261, subdivision (a)(4), provides: "Where a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim meets any one of the following conditions: [¶] (A) Was

2

unconscious or asleep."[2]  For convenience, we refer to the circumstance described

in section 261, subdivision (a)(3), as rape of an intoxicated person, and the

---

[2]     In its entirety, section 261, subdivision (a), provides:  "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

"(1)  Where a person is incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be known to the person committing the act.  Notwithstanding the existence of a conservatorship pursuant to the provisions of the Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code), the prosecuting attorney shall prove, as an element of the crime, that a mental disorder or developmental or physical disability rendered the alleged victim incapable of giving consent.

"(2)  Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another.

"(3)  Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused.

"(4)  Where a person is at the time unconscious of the nature of the act, and this is known to the accused.  As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim meets any one of the following conditions:

"(A)  Was unconscious or asleep.

"(B)  Was not aware, knowing, perceiving, or cognizant that the act occurred.

"(C)  Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact.

"(D)  Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose.

"(5)  Where a person submits under the belief that the person committing the act is someone known to the victim other than the accused, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief.

"(6)  Where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat.  As used in this

*(footnote continued on next page)*

circumstance described in section 261, subdivision (a)(4)(A), as rape of an unconscious person.

We must decide whether defendant was properly convicted of both rape of an intoxicated person and rape of an unconscious person.

"As relevant here, section 954 provides: 'An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . .' We have repeatedly held that the same act can support multiple charges and multiple convictions. 'Unless one offense is necessarily included in the other [citation], multiple convictions can be based upon a single criminal act or an indivisible course of criminal conduct (§ 954).' (*People v. Benavides* (2005) 35 Cal.4th 69, 97.) Section 954 thus concerns the propriety of multiple convictions, not multiple punishments, which are governed by section 654." (*Gonzalez*, *supra*, 60 Cal.4th at pp. 536-537.)

---

*(footnote continued from previous page)*

paragraph, 'threatening to retaliate' means a threat to kidnap or falsely imprison, or to inflict extreme pain, serious bodily injury, or death.

"(7)  Where the act is accomplished against the victim's will by threatening to use the authority of a public official to incarcerate, arrest, or deport the victim or another, and the victim has a reasonable belief that the perpetrator is a public official.  As use in this paragraph, 'public official' means a person employed by a governmental agency who has the authority, as part of that position, to incarcerate, arrest, or deport another.  The perpetrator does not actually have to be a public official."

4

In *Gonzalez*, *supra*, 60 Cal.4th 533, the defendant was convicted of oral copulation of an unconscious person under section 288a, subdivision (f), and oral copulation of an intoxicated person under section 288a, subdivision (i), based on the same act. The defendant there, like defendant here, contended that he could not be convicted of both subdivisions. Disagreeing, we held that the separate subdivisions of section 288a described different offenses, and thus the defendant was properly convicted of two of those offenses. We said that the question "turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*Gonzalez*, at p. 537.)

To ascertain legislative intent, we began by examining the statute's words. (*Gonzalez*, *supra*, 60 Cal.4th at p. 537.) We noted that the offenses stated in subdivisions (f) and (i) of section 288a "differ in their necessary elements — an act of oral copulation may be committed with a person who is unconscious but not intoxicated, and also with a person who is intoxicated but not unconscious — and neither offense is included in the other." (*Gonzalez*, at p. 539.)

We also distinguished *People v. Craig* (1941) 17 Cal.2d 453 (*Craig*) which, as discussed further below, held that the different subdivisions of former section 261 do *not* define different offenses. We explained that "[s]ection 288a is textually and structurally different from former section 261. Subdivision (a) of section 288a defines what conduct constitutes the act of oral copulation. Thereafter, subdivisions (b) through (k) define various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no

impediment to a defendant's conviction under more than one such subdivision for a single act." (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.)

Relying primarily on *Craig*, *supra*, 17 Cal.2d 453, the Court of Appeal concluded that the subdivisions of section 261 do not state different offenses. As we explained in *Gonzalez*, the defendant in *Craig* "was found guilty of two counts of rape based on a single act of intercourse committed without the consent and against the will of a 16-year-old girl. The first count alleged the rape was committed with force and violence, in violation of former section 261, subdivision 3. The second count, after alleging that it was ' "a different statement of the same offense" ' (*Craig*, at p. 454) charged statutory rape of a child below the age of consent, in violation of former section 261, subdivision 1. This court held that '[u]nder this section, but one punishable offense of rape results from a single act of intercourse, although that act may be accomplished under more than one of the conditions or circumstances specified in the foregoing subdivisions. These subdivisions merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act.' (*Craig*, at p. 455.)" (*Gonzalez*, *supra*, 60 Cal.4th at pp. 538-539.)

Because of the differences between section 288a and former section 261 that we identified in *Gonzalez*, we did not have to address whether *Craig*, *supra*, 17 Cal.2d 453, remains good law as applied to rape. (*Gonzalez*, *supra*, 60 Cal.4th at p. 540.) We must do so now.

The Legislature has changed the structure of the precise crimes at issue in *Craig*, *supra*, 17 Cal.2d 453. It removed the crime of statutory rape on a child under the age of 18 from section 261 entirely and, renaming it "[u]nlawful sexual intercourse" with a person under the age of 18, placed the crime in section 261.5. (See *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 884-885.) "[I]n

6

separating and renaming the offense of unlawful sexual intercourse, the Legislature sought to eliminate, for section 261.5 offenses, the social stigma associated with the rape label . . . ." (*Id*. at p. 885.) However, although section 261 no longer contains one of the specific subdivisions involved in *Craig*, that section still contains separate subdivisions defining how one can be guilty of rape. The legislative change regarding what had been called statutory rape, and is now called unlawful sexual intercourse, does not itself invalidate *Craig*'s general pronouncement that the different subdivisions of section 261 do not state different offenses. However, other circumstances cause us to conclude that today the different subdivisions of section 261, like the different subdivisions of section 288a, do define separate crimes.

When *Craig*, *supra*, 17 Cal.2d 453, was decided, the courts did not distinguish between multiple *punishment* and multiple *conviction* as clearly as courts do today. Indeed, *Craig* itself conflated the two concepts. It stated: "There has been a violation of but one statute — section 261 of the Penal Code. And, while the proof necessarily varies with respect to the several subdivisions of that section under which the charge may be brought, the sole *punishable* offense under any and all of them is the unlawful intercourse with the victim. We conclude that only one *punishable* offense of rape results from a single act of intercourse, though it may be chargeable in separate counts when accomplished under the varying circumstances specified in the subdivisions of section 261 of the Penal Code." (*Id*. at p. 458, italics added.) A later case explained that *Craig*'s statement that section 261's different subdivisions do not state different offenses "must be read in light of the problem then before the court, that is, whether the defendant could be doubly punished for a single act. Under section 654 of the Penal Code it is clear that double punishment would be improper [citations], regardless of whether there

7

is but one offense or six different offenses of rape." (*In re Hess* (1955) 45 Cal.2d 171, 174.)

The problem identified in *In re Hess*, *supra*, 45 Cal.2d 171, no longer exists. We explained the relevant history in *People v. Pearson* (1986) 42 Cal.3d 351: "This court has long struggled with the problem of permitting multiple convictions while protecting the defendant from multiple punishment. Some of our earlier decisions held that the imposition of concurrent sentences sufficiently protected the defendant from multiple punishment because he would be serving each of his sentences simultaneously. [Citation.] In other cases, however, we refused to affirm multiple convictions because of the possibility that such convictions would disadvantage the defendant when the Adult Authority fixed the date he would ultimately be released from prison. [Citations.] In *Neal v. State of California* [(1960)] 55 Cal.2d 11, we went so far as to indicate that multiple convictions were invalid per se. [Citation.] [¶] Our later cases, however, reaffirmed that section 654 bars multiple punishment, not multiple conviction. [Citations.]" (*Id.* at p. 359.)

As we further explained in *People v. Pearson*, today, when section 654 bars multiple punishment, but section 954 permits multiple convictions, rather than reverse the additional conviction, courts simply stay the punishment for that conviction. (*People v. Pearson*, *supra*, 42 Cal.3d at p. 360.) Thus, to the extent the result in *Craig, supra*, 17 Cal.2d 453 — reversing the second rape conviction — was driven by the need to avoid multiple punishment, that need no longer exists. For this reason, in *Gonzalez*, *supra*, 60 Cal.4th 533, we were able to uphold multiple convictions for the different subdivisions of the oral copulation statute while avoiding multiple punishment. Because *Craig* was based on a legal landscape that is now changed, its rule does not necessarily govern today. Although we have no reason to question whether *Craig* was correct when decided,

8

subsequent events have made it no longer authoritative regarding today's section 261. A fresh look is warranted at whether the different subdivisions of section 261 are separate statements of the same offense, or whether, like the analogous subdivisions of section 288a, they state different offenses.

Taking this fresh look, we conclude that the same rule should apply to the different subdivisions of section 261, regarding rape, as applies to the different subdivisions of section 288a, regarding oral copulation. There are, indeed, some structural differences between the two statutes, as we explained in *Gonzalez*, *supra*, 60 Cal.4th 533. The main difference is that the subdivisions of section 288a are self-contained; that is, each subdivision refers separately to a person who commits an act of oral copulation. The structure of the other two major sex offenses — sodomy under section 286 and sexual penetration under section 289 — is similar in this regard. Section 261's subdivisions are not self-contained in this way. Section 261, subdivision (a), defines and uses the word "[r]ape" but once. The descriptions in the various parts of that subdivision of the different ways in which rape may be committed do not repeat the word "rape" but refer back to that original definition.

Although section 261 is different from section 288a — and sections 286 and 289 — in this respect, we do not believe the repetition of the term "oral copulation" in the various subdivisions of section 288a — or "sodomy" in section 286 or "sexual penetration" in section 289 — and the single use of the word "rape" in section 261, indicates a legislative intent to permit multiple convictions for the various subdivisions concerning oral copulation, sodomy, or sexual penetration while forbidding multiple convictions for the otherwise analogous provisions of rape. *Substantively*, the provisions regarding the four major sex crimes parallel each other. The conduct and mental state of the perpetrator and the characteristics of the victim that, when accompanying the acts of intercourse, oral

9

copulation, sodomy, and sexual penetration, transform these sexual acts into crimes are essentially identical. The precise forms of rape at issue here and of oral copulation at issue in *Gonzalez* are identical except that the former involve sexual intercourse and the latter involve oral copulation. We see no suggestion that the Legislature intended, and no reason it might have intended, a different rule for rape than exists for oral copulation (and, presumably, for sodomy and sexual penetration).

What we said in *Gonzalez*, *supra*, 60 Cal.4th at page 539, about the elements of the two forms of oral copulation being different applies equally to the two forms of rape. An act of rape "may be committed with a person who is unconscious but not intoxicated, and also with a person who is intoxicated but not unconscious[;] neither offense is included in the other."

Moreover, different sections of the Penal Code provide sentencing consequences that are different for some forms of rape than for others. For example, section 667.5 enhances a sentence for a violent felony for prior prison terms served for other violent felonies. Section 667.5, subdivision (c)(3), defines a violent felony for this purpose as including "[r]ape as defined in paragraph (2) or (6) of subdivision (a) of Section 261 . . . ." Thus, this enhancement applies to some forms of rape but not others. Similarly, section 667.6 enhances a sentence for specified sex offenses for prior convictions of those offenses. Section 667.6, subdivision (e) (1), provides that these specified offenses include "[r]ape, in violation of paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261." Thus, this enhancement also applies to some forms of rape but not others; indeed, it applies to different forms than section 667.5. We also note that, although the change would not apply to defendant, who committed his crime in February 2010,

section 264 was amended later that year to increase the punishment for one form of rape of persons under certain ages, but not for the other forms of rape.[3]

A jury verdict finding a defendant guilty of a single umbrella crime of rape under section 261 would not include a finding regarding which form of rape was involved. Because of this, providing differing sentencing consequences for some, but not all, of the forms of rape suggests they state different offenses. (See *Gonzalez*, *supra*, 60 Cal.4th at p. 539.)

The statutes concerning the major sex offenses of rape, sodomy, oral copulation, and sexual penetration (§§ 261, 286, 288a, 289) have been amended often over the years. Both parties cite legislative history materials regarding various amendments to support their positions. But nothing cited indicates the Legislature ever considered, or expressed an intent regarding, whether a person may suffer multiple convictions of the separate subdivisions of the various sex offenses. However, strong indications exist that the Legislature intended the rule to be consistent for each of these major sex crimes. As a result of the amendments over the years, today, the elements of the various ways the crimes can be committed (i.e., the various subparts of the statutes) are similar.

This circumstance is no coincidence. It appears that was the Legislature's intent. For example, a 1986 enactment made changes in all four of these sections that helped to bring about this conformity. (Stats. 1986, ch. 1299, §§ 1, 3, 5, 6, pp.

---

**3**      Today, section 264, subdivision (c), provides in pertinent part: "(1) Any person who commits rape in violation of paragraph (2) of subdivision (a) of Section 261 upon a child who is under 14 years of age shall be punished by imprisonment in the state prison for 9, 11, or 13 years.
"(2) Any person who commits rape in violation of paragraph (2) of subdivision (a) of Section 261 upon a minor who is 14 years of age or older shall be punished by imprisonment in the state prison for 7, 9, or 11 years." (Stats. 2010, ch. 219, § 4, eff. Sept. 9, 2010.)

4592-4599.)  A Senate committee report on the Assembly bill behind this enactment stated that the "bill would conform the criteria used to determine the commission of each of the four major sex offenses:  rape, sodomy, oral copulation, and foreign object rape; thus, the elements of these crimes relating to force, consent, and violence would be consistent."  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3485 (1985-1986 Reg. Sess.) as amended June 30, 1986, p. 2.) Neither this committee report, the bill itself, nor the resulting statutory amendments specifically address the question of multiple convictions of the various subdivisions of section 261, 286, 288a, or 289.  But the intent to achieve conformity among these sex offenses strongly indicates a legislative intent that rape be treated similarly to the other sex crimes in this regard.

For these reasons, we agree with Justice Benke's dissent in the Court of Appeal that the Legislature did not intend "to treat the sex crimes of rape and oral copulation differently, such that a defendant who commits oral copulation of an intoxicated and unconscious person can be guilty of two offenses, whereas a defendant who commits rape of an intoxicated and unconscious person can be guilty of only one offense."  Accordingly, we overrule *People v. Craig*, *supra*, 17 Cal.2d 453, to the extent it held that the different subdivisions of former section 261 "merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act."  (*Craig*, at p. 455.)

Defendant argues that the existence of section 263 militates against this conclusion.  That section provides:  "The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape.  Any sexual penetration, however slight, is sufficient to complete the crime."  Nothing in this section suggests the intent to prohibit multiple convictions of section 261's separate subdivisions or to treat rape differently from the other sex offenses.

12

Indeed, the statutes defining the other two sex offenses for which the concept of penetration is relevant contain similar provisions regarding the extent of the required penetration. (§§ 286, subd. (a) ["Any sexual penetration, however slight, is sufficient to complete the crime of sodomy."], 289, subd. (k)(1) [" 'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person . . . ."].)

Defendant also argues that legislative inaction in the decades since *Craig*, *supra*, 17 Cal.2d 453, was decided indicates the Legislature's intent to ratify that decision. We disagree. "In some circumstances, legislative inaction might indicate legislative approval of a judicial decision. [Citation.] 'However, legislative inaction alone does not necessarily imply legislative approval. "The Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute: the sheer pressure of other and more important business, political considerations, or a tendency to trust to the courts to correct their own errors . . . ." ' " (*People v. Whitmer* (2014) 59 Cal.4th 733, 741.) The courts, not the Legislature, have generally interpreted, applied, and reconciled sections 654 and 954. Legislative inaction in this regard most likely indicates a willingness to let the courts continue to do so.

Defendant argues that the rule of lenity requires us to interpret the statute in his favor. " '[W]e have repeatedly stated that when a statute *defining a crime or punishment* is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt that interpretation more favorable to the defendant.' (*People v. Avery* (2002) 27 Cal.4th 49, 57, italics added.) The purpose of this rule is to ensure that criminal statutes provide fair warning of what behavior is considered criminal and what the punishment for that behavior will be. (*Ibid*.)" (*People v. Story* (2009) 45 Cal.4th 1282, 1294.) But our interpretation of section 261 "defines neither a crime nor punishment." (*Story*, at p. 1294.) The definition

of the crimes of which defendant was convicted predated his committing them, and everyone agrees that he cannot be punished for both offenses. "Moreover, 'although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent.' (*People v. Avery*, *supra*, at p. 58.) Here we can fairly discern a legislative intent to" treat section 261 similarly to section 288a regarding multiple convictions. (*Story*, at p. 1294.)

Finally, defendant argues that applying this interpretation of section 261 to him would violate the prohibition against ex post facto laws. A statute violates the prohibition against ex post laws if it punishes as a crime an act that was innocent when done or increases the punishment for a crime after it is committed. (*Collins v. Youngblood* (1990) 497 U.S. 37, 41-42; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 638-639.) "Correspondingly, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law." (*People v. Davis* (1994) 7 Cal.4th 797, 811; accord, *People v. Blakeley* (2000) 23 Cal.4th 82, 91.) But our construction of section 261 has no ex post facto effect. It neither makes criminal an act innocent when committed nor increases the punishment for that act. No rule prohibits applying our interpretation of section 261 to this case.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**

14

## DISSENTING OPINION BY LIU, J.

The rape statute, Penal Code section 261, says: "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] . . . ." (Pen. Code, § 261, subd. (a) (hereafter section 261(a); all further statutory references are to this code.) The statute then lists seven circumstances under which an act of intercourse constitutes rape, including, as relevant here, "(3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused," and "(4) Where a person is at the time unconscious of the nature of the act, and this is known to the accused. . . ." (*Id.*, subd. (a)(3) & (4).)

In *People v. Craig* (1941) 17 Cal.2d 453 (*Craig*), we held that the different circumstances of former section 261 do not define different offenses; the statute instead defines only one offense. In *People v. Gonzalez* (2014) 60 Cal.4th 533 (*Gonzalez*), we distinguished section 261, as construed by *Craig*, in the course of holding that the subdivisions of the oral copulation statute, section 288a, each define a different offense. In this case, defendant Billy Charles White was charged and convicted of two counts of rape — one for having sex with an intoxicated person (§ 261(a)(3)), the other for having sex with an unconscious person (§ 261(a)(4)) — based on a single act against a single victim. The Court of Appeal, applying *Craig*, held that White's one act of sexual intercourse could not

sustain two rape convictions.  The court today reaches the opposite conclusion, overruling *Craig*.

What concerns me about today's decision is not the result; whether the various circumstances under which sexual intercourse constitutes rape should define a single offense or multiple offenses is a policy question on which I express no view.  What concerns me is the dubious methodology that today's decision employs.  The court overrules *Craig*, a precedent that has stood undisturbed for 75 years, even though " '[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation . . . .' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1213 (*Latimer*).)  In order to cast doubt on *Craig*, the court ascribes to *Craig* a rationale that *Craig* did not adopt, even though " 'we are not aware of any legal principle by which a court, years after rendering a decision, can retroactively alter its ratio decidendi.' " (*Fashion Valley Mall, LLC v. National Labor Relations Bd.* (2007) 42 Cal.4th 850, 880 (dis. opn. of Chin, J.).)  And the court cites shards of legislative history to speculate that "the Legislature intended the rule to be consistent for [the four] major sex crimes" (maj. opn., *ante*, at p. 11), even though " ' "statutory language is usually the most reliable indicator of legislative intent" ' " (*People v. Albillar* (2010) 51 Cal.4th 47, 55) and the text of section 261 is relevantly different from the text of the statutes criminalizing sodomy, oral copulation, and sexual penetration (§§ 286, 288a, 289).

A straightforward reading of section 261 and application of *Gonzalez* lead to the conclusion that the rape statute defines a single offense.  Because today's contrary decision strays from important principles of judicial methodology, I respectfully dissent.

## I.

As noted, section 261(a) provides that rape is as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under

2

any of the following circumstances," and then lists seven clauses that begin with the word "Where," such as "(3) Where a person is prevented from resisting by any intoxicating or anesthetic substance . . . ." (The full text of the statute is printed as an appendix at the end of this opinion.) In *Craig*, the defendant was convicted of both forcible rape and rape of a minor, which at the time were separate circumstances under section 261. (*Craig*, *supra*, 17 Cal.2d at p. 454.) The trial court sentenced the defendant to two prison sentences, one for each rape conviction, to run concurrently. (*Ibid.*) We held that the "Where" clauses of section 261 "merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act." (*Craig*, at p. 455.) In light of our holding, we modified the judgment to consolidate the two convictions, although the consolidated conviction indicated that the defendant committed a rape in violation of two different circumstances of section 261. (*Craig*, at p. 459.)

Today's decision overrules *Craig* without acknowledging that " '[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation' " because the Legislature " 'remains free to alter what we have done.' " (*Latimer*, *supra*, 5 Cal.4th at p. 1213, quoting *Patterson v. McLean Credit Union* (1989) 491 U.S. 164, 172–173.) " 'It is, of course, a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices.' " (*Latimer*, at p. 1212.) Something more is needed to overrule precedent. In statutory cases, we typically consider whether the precedent has proven unworkable, contrary to public policy, inconsistent with the express language of other statutes, or inconsistent in application. (*People v. Morante* (1999) 20 Cal.4th 403, 430.)

3

Since *Craig*, the Legislature has amended section 261 in a number of ways. For instance, the Legislature has abrogated *Craig*'s immediate holding by defining statutory rape as its own offense. (§ 261.5.) But this change "does not . . . invalidate *Craig*'s general pronouncement that the different subdivisions of section 261 do not state different offenses." (Maj. opn., *ante*, at p. 7.) The Legislature has also updated the substantive elements of the circumstances. For example, when *Craig* was decided, rape of an intoxicated victim occurred where the victim was "prevented from resisting . . . by any intoxicating narcotic, or anaesthetic, substance, administered by or with the privity of the accused." (Former § 261, subd. (4), as amended by Stats. 1913, ch. 122, § 1, p. 213.) Today the victim must have been "prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." (§ 261(a)(3).)

But section 261's structure has remained essentially unchanged. Whereas section 261(a) used to provide that a rape occurred under "either of the following circumstances" (former § 261, as amended by Stats. 1913, ch. 122, § 1, p. 212), the statute now says a rape occurs under "any" of the listed circumstances (§ 261(a)). In addition, the semicolons separating the circumstances have been replaced by periods, while the word "she" has been replaced by "a person" in all the circumstances. None of these changes indicates a legislative intent to change what we said in *Craig* about the number of offenses section 261 defines. Nor are the changes significant enough to distinguish former section 261 from the current version; the court does not suggest otherwise. Because *Craig* is a statutory precedent, and because the statute it construed has not changed in any relevant way, stare decisis applies to *Craig* with " 'special force.' " (*Latimer*, *supra*, 5 Cal.4th at p. 1213.)

The court's sole justification for overruling *Craig* is its theory that *Craig* was motivated by avoiding multiple punishment, a concern that in the court's view has since been laid to rest with the stay procedure developed under section 654. (Maj. opn., *ante*, at pp. 7–9.) But section 654 was already in force during *Craig*'s time. Like section 261, section 654 was part of the first Penal Code enacted in 1872 and remains largely unchanged to this day. Thus, courts have long been aware that one act cannot result in multiple punishments, no matter the number of convictions. As today's opinion recognizes, the practice at *Craig*'s time was to run sentences concurrently (maj. opn., *ante*, at p. 8, citing *People v. Pearson* (1986) 42 Cal.3d 351, 359, which in turn cited *People v. Kynette* (1940) 15 Cal.2d 731, 761–762), as the trial court did in *Craig* itself (*Craig*, *supra*, 17 Cal.2d at p. 455).

Although I agree that the stay procedure is a better way of giving effect to section 654 than concurrent sentences (*In re Wright* (1967) 65 Cal.2d 650), our adoption of the stay procedure did not change the legal landscape in any way that justifies overruling *Craig*. There is no indication that the result in *Craig* would have been different had the stay procedure been available then. And although *Craig* did say that one act of rape could result in only one "punishable offense" (*Craig*, *supra*, 17 Cal.2d at p. 458) — a truism in light of section 654 — our decision nowhere said that avoiding multiple punishments was part of the rationale for construing section 261 as we did. Indeed, *Craig* never mentioned section 654 and instead relied on cases that had nothing to do with punishment. (See *Craig*, at pp. 455–457, discussing *People v. Vann* (1900) 129 Cal. 118 and *People v. Jailles* (1905) 146 Cal. 301.) It is simply not accurate to say that *Craig* was primarily concerned with multiple punishment or that *Craig* "conflated" conviction with punishment. (Maj. opn., *ante*, at p. 7.)

5

It is true that this court in *In re Hess* (1955) 45 Cal.2d 171, 174, described *Craig* as being motivated by multiple punishment. But we have clarified that *Hess* did not disturb *Craig*'s validity. (*People v. Collins* (1960) 54 Cal.2d 57, 59 ["[*Hess*] do[es] not . . . impliedly overrule [*Craig*]."].) More fundamentally, this court does not have authority to alter our precedent by declaring, after the fact, that the "real" ground of a decision was something other than what the court said in its published opinion. Just as "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation" (*Bruesewitz v. Wyeth LLC* (2011) 562 U.S. 223, 242), post hoc rationalization of a judicial decision is not a legitimate approach to reading precedent. A hallmark of our adjudicatory tradition is that courts do not merely announce holdings or dispositions; they also provide reasoning that furthers the orderly and transparent development of the law. Litigants are entitled to rely on such reasoning without wondering what the court will later posit as the "real" motivation for a given decision. (See *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902 ["The doctrine of stare decisis applies . . . to the ratio decidendi or actual ground of decision of a case . . . ."].)

In sum, the court overrules *Craig* by creating a straw man and knocking it down. There is no basis to conclude that *Craig* was motivated by outdated concerns about multiple punishment. Indeed, just recently we said that *Craig* "simply concluded, *based on the wording and structure of the statute*, that former section 261 set forth only one offense that could be committed under several different circumstances, as described in its several subdivisions. *This conclusion flowed naturally from the wording and structure of former section 261*." (*Gonzalez*, *supra*, 60 Cal.4th at p. 539, italics added, fn. omitted.) Today's opinion nowhere suggests that *Craig* is unworkable, contrary to the express

6

language of other statutes, or out of step with public policy. I would affirm the rule we established in *Craig* on stare decisis grounds alone.

## II.

Even if we were justified in taking a "fresh look" at the issue presented (maj. opn., *ante*, at p. 9), I would find today's opinion erroneous. Our recent opinion in *Gonzalez* points the way.

In *Gonzalez*, we addressed whether the subdivisions of the oral copulation statute, section 288a, each define a separate offense or describe different means of committing one offense. The Court of Appeal in that case had relied on *Craig* to find that the defendant, who had been convicted of performing oral copulation on a victim who was both intoxicated and unconscious, had committed only one violation of section 288a. (*Gonzalez*, *supra*, 60 Cal.4th at p. 538.) But, as we explained, "[s]ection 288a is textually and structurally different from former section 261. Subdivision (a) of section 288a defines what conduct constitutes the act of oral copulation. Thereafter, subdivisions (b) through (k) define various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense . . . ." (*Id.* at p. 539.) We thus distinguished *Craig* and concluded that section 288a defines multiple offenses. (*Gonzalez*, at p. 540.) (I have also attached the full text of section 288a at the end of this opinion, for ease of comparison with section 261.)

But we did not merely distinguish *Craig* in *Gonzalez*. As noted, we said that *Craig*'s statutory holding "flowed naturally from the wording and structure of former section 261." (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.) Moreover, among all the reasons we gave for concluding that section 288a defines multiple offenses — the relationship between the definitional subdivision and the operative

7

subdivisions, the self-contained nature of the operative subdivisions, the way the punishments are defined, and the fact the punishments are not all the same — none applies to section 261.

The initial text of section 261(a) does not by itself define what conduct constitutes an act of rape. Instead, section 261(a) must be read in conjunction with one of the individual circumstances — (1) through (7) — to form a definition of rape. The circumstances of section 261(a) do not each "set forth all the elements of a crime," as the operative subdivisions of section 288a do. (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.) Rather, the circumstances are organized and numbered as inferior clauses of subdivision (a). The text and structure of section 261(a) suggest it defines only one offense: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any" one of seven circumstances.

In the oral copulation statute, by contrast, the operative subdivisions (§ 288a, subds. (b)–(k)) that follow the definitional subdivision (§ 288a, subd. (a)) are all complete sentences; each stands on its own as a description of an oral copulation offense. (E.g., § 288a, subd. (f) ["Any person who commits an act of oral copulation, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act, shall be punished by imprisonment . . . ."].) As noted, *Gonzalez* relied on the fact that each operative subdivision of section 288a is "self-contained," in contrast to the text and structure of section 261, as support for the conclusion that section 288a defines multiple offenses. (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.)

The way punishments are prescribed also suggests that section 261 defines one offense. In *Gonzalez*, we noted that each operative subdivision of section 288a defines its own punishment and that the punishments are not all the same. (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.) By contrast, the individual circumstances

8

of section 261(a) do not define their own punishments.  The punishment for violating section 261 is defined in a different Penal Code provision.  (§ 264.)  And at the time of White's offense, the punishment was the same for all the circumstances.  (Former § 264, subd. (a), as amended by Stats. 1999, ch. 853, § 11, p. 6121.)  The structure of section 264 also supports viewing rape as one offense:  In order to change the punishment for rape, the Legislature at the time of White's offense would have needed to amend section 264, subdivision (a) only once; to do the same for oral copulation, the Legislature at the time of the offense in *Gonzalez* would have needed to amend section 288a twelve times (see former § 288a, as amended by Stats. 2002, ch. 302, § 4, p. 1204).

The court notes that two other provisions of the Penal Code — sections 667.5 and 667.6 — can provide different penal consequences for some forms of rape.  (Maj. opn., *ante*, at p. 10.)  I doubt that statutes enacted in 1976 and 1979 tell us much about the intent of the Legislature that enacted the original rape statute in 1872 or the intent of the Legislature that amended section 261 along with the other major sex crimes in 1986.  (Maj. opn., *ante*, at p. 11.)  In any event, neither section 667.5 nor section 667.6 has the import the court suggests.

Section 667.5 is a violent felony enhancement provision that is not specific to rape.  (§ 667.5, subd. (c) [defining violent felony to include 23 types of offenses].)  For example, the statute enhances the penalty for "[a]ny burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary."  (§ 667.5, subd. (c)(21).)  Surely the court does not mean to imply that first degree burglary of an occupied residence is a different offense from ordinary first degree burglary.  As this example demonstrates, section 667.5 is best understood as enhancing the punishment for particularly reprehensible forms of conduct during the commission

9

of specified offenses. In this regard, section 667.5 is no different from any other sentencing enhancement, such as personal use of a firearm under section 12022, and sheds no light on how many offenses are defined by the statutes listed in section 667.5, subdivision (c).

The Legislature had the same intent when it enacted section 667.6. Section 667.6 provides a sentencing enhancement when the defendant is convicted of certain sex offenses in specified circumstances. (§ 667.6, subds. (a)–(d).) When section 667.6 was first enacted in 1979, the enhancement applied to any person convicted of "violating subdivision (2) or (3) of Section 261 . . . , *or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm*" for the second time. (§ 667.6, subd. (a), as enacted by Stats. 1979, ch. 944, § 10, p. 3258, italics added.) The italicized language indicates that, as with section 667.5, the Legislature's intent was to enhance the punishment for particularly reprehensible forms of conduct during the commission of the specified offenses. In that light, section 667.6's reference to specific circumstances of section 261 is best understood as shorthand for the forms of rape that involve "force, violence, duress, menace or threat of great bodily harm," not as a delineation of different offenses. (See former § 261, as amended by Stats. 1970, ch. 1301, § 1, p. 2405 ["2. Where she resists, but her resistance is overcome by force or violence; [¶] 3. Where she is prevented from resisting by threats of great and immediate bodily harm . . . ."].) The Legislature amended section 667.6 to its present form in 2006, which now lists both the individual circumstances of section 261 and the individual subdivisions of sections 286 and 288a that involve use of force or threatened use of force. (§ 667.6, subd. (e).) But this change does not indicate that the Legislature changed its view of section 261.

In sum, none of the reasons we gave in *Gonzalez* for concluding that section 288a defines multiple offenses applies to section 261. All of the factors point in the other direction. Today's opinion applies *Gonzalez*'s holding without applying its reasoning. In so doing, the court not only overrules *Craig*, it also empties *Gonzalez* of its analytical content. What remains of *Gonzalez*'s reasoning to guide lower courts, prosecutors and defense counsel, the Legislature, and the public as to how this court interpreted the criminal statutes at issue? I would follow the high court's admonition that "[w]hen an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." (*Seminole Tribe of Fla. v. Florida* (1996) 517 U.S. 44, 67.) Applying the reasoning of *Gonzalez*, I would conclude, as *Craig* concluded, that section 261 defines one offense.

### III.

At the heart of today's opinion is the court's view that there is "no suggestion that the Legislature intended, and no reason it might have intended, a different rule for rape than exists for oral copulation (and, presumably, for sodomy and sexual penetration)." (Maj. opn., *ante*, at p. 10.) But the Legislature wrote the statutes differently, and we said in *Gonzalez* that those differences are relevant to whether each statute defines one crime or multiple crimes. What more does the court need?

The best indication of the Legislature's intent are the words of the statute the Legislature enacted. (See, e.g., *Barker v. Workers' Comp. Appeals Bd.* (2011) 52 Cal.4th 434, 442; *Tonya M. v Superior Ct.* (2007) 42 Cal.4th 836, 844.) The Legislature knows how to write statutes that define multiple offenses. (§ 288a.) It also knows how to draft two sex offense statutes to be identical in every regard except for the sex act. (Compare § 288a with § 286.) The court hypothesizes that the " ' " 'sheer pressure of other and more important business, political

11

considerations, or a tendency to trust to the courts to correct their own errors' " ' " may have prevented the Legislature from correcting *Craig*. (Maj. opn., *ante*, at p. 13.) But the Legislature has repeatedly amended section 261 since *Craig*'s time. (Maj. opn., *ante*, at pp. 11–12.) It has had ample opportunity to ensure conformity between section 261 and sections 286, 288a, and 289, but it has not done so. We should take the statutes' differences at face value instead of imputing a consistency that the Legislature never adopted.

The court observes that the Legislature in 1986 sought to conform the substantive elements of the four "major sex offenses of rape, sodomy, oral copulation, and sexual penetration." (Maj. opn., *ante*, at pp. 11–12.) I agree that the Legislature sought to criminalize the same *conduct* across each offense. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3485 (1985–1986 Reg. Sess.) as amended June 30, 1986, p. 2 [noting that the "bill would conform *the criteria used to determine the commission* of each of the four major sex offenses" (italics added)].) As a result, whether or not an act is criminal does not turn on which sex act was involved. But that is as far as we can fairly say the Legislature's intent goes. There is no evidence that the Legislature intended the four offenses to be treated similarly beyond the similarities the Legislature wrote into the statutes.

The court says it is unable to conjure why the Legislature might have wanted sections 261, 286, 288a, and 289 to be treated differently. (Maj. opn., *ante*, at p. 10.) But the four statutes were not written at the same time, nor do they share a common heritage. The lineages of the statutes criminalizing sodomy, oral copulation, and sexual penetration differ from the lineage of the rape statute — a difference the court elides by labeling "rape, sodomy, oral copulation, and sexual penetration" as the four "major sex offenses." (Maj. opn., *ante*, at p. 11.) Only "rape" is a sex offense. The other terms — "sodomy," "oral copulation," and "sexual penetration" — are neutral descriptors of sex acts, like the term "sexual

12

intercourse"; they are not sex offenses in and of themselves. This terminological difference is a tip-off that the latter three offenses are different from rape.

Rape was a crime at common law, defined as "the carnal knowledge of a woman forcibly and against her will." (4 Blackstone, Commentaries 210.) Although this definition would appear to describe only forcible rape, it was understood that rape could be committed by other means, such as by having sex with an underage victim, using threats of violence to coerce the victim into having sex, administering an intoxicating agent to the victim, or having sex with an unconscious victim. (*People v. Snyder* (1888) 75 Cal. 323, 324, overruled by *People v. Collins*, *supra*, 54 Cal.2d 57.) As we recognized in *Snyder*, the Legislature in 1872 codified the common law of rape by enumerating these means in the original version of section 261 and did not intend to change how rape was pleaded or proven. (*Snyder*, at pp. 324–325.) The information in that case alleged that the defendant " 'feloniously did ravish' " the victim and raped her " 'by force, violence and against her will and resistance,' " but the evidence showed only that the victim was intoxicated. (*Id.* at p. 323.) We upheld the conviction, explaining that the way the defendant had been charged was the way he would have been charged at common law, and at common law such a charge would have been sufficient in the circumstances. (*Id.* at pp. 324–325.) We subsequently overruled *Snyder* on due process grounds to provide adequate notice to the defendant of the criminal acts alleged. (*Collins*, at p. 60.) But this did not affect the common law roots of the rape statute.

There were no analogous common law antecedents for sodomy, oral copulation, or sexual penetration. At common law, any act of sodomy — the "infamous crime against nature" — was criminal. (4 Blackstone, Commentaries 215.) It therefore would have been unnecessary, and indeed meaningless, to have specified the means or circumstances of committing sodomy. Reflecting the

13

common law, the 1872 Penal Code contained a blanket prohibition on all sodomy. (§ 286, as enacted by Pen. Code of 1872, § 286.) And when the Legislature enacted the first oral copulation statute in 1921, that statute also criminalized all acts of oral copulation. (§ 288a, as enacted by Stats. 1921, ch. 848, § 2, p. 1633.)

The Legislature did not decriminalize sodomy and oral copulation until 1975, when in accordance with contemporary sexual mores the Legislature amended sections 286 and 288a to criminalize sodomy and oral copulation in only three specified circumstances: where the victim was underage, where the victim was compelled by force or threats of force, and where the perpetrator acted in concert with another and against the victim's will. (Stats. 1975, ch. 71, §§ 7, 10, pp. 133–134.) These circumstances were not the same as the circumstances then in effect for rape (see former § 261, as amended by Stats. 1970, ch. 1301, § 1, p. 2405), indicating that the Legislature at the time did not have rape in mind and did not intend sodomy or oral copulation to be treated the same way as rape. The Legislature added the sexual penetration statute in 1978 and modeled that statute on the recently amended sodomy and oral copulation statutes. (§ 289, as enacted by Stats. 1978, ch. 1313, § 1, p. 4300.)

In addition to specifying different criminal circumstances for oral copulation and sodomy in 1975 than for rape, the Legislature took a different approach to defining those circumstances: Each was given its own self-contained subdivision. (See former §§ 286, 288a, as amended by Stats. 1975, ch. 71, §§ 7, 10, pp. 133, 134.) When the Legislature amended the statutes to criminalize additional circumstances, it gave the new circumstances their own self-contained subdivisions too. (See, e.g., Stats. 1977, ch. 490, §§ 1–2, p. 1614 [criminalizing sodomy and oral copulation where victim was unconscious]; Stats. 1981, ch. 896, §§ 1–3, pp. 3414–3416 [criminalizing sodomy, oral copulation, and sexual penetration where victim was of unsound mind].) This compartmentalization

14

reflects the fact that each of the three original criminal circumstances of sodomy and oral copulation reflected a different type of wrong (underage victim, act committed by force, and act committed with another), each meriting a different punishment. In contrast to the rape statute, there was no common law heritage on which the Legislature could draw to provide conceptual unity to the sodomy and oral copulation statutes.

It is thus clear that the Legislature in 1975 intended each subdivision of sections 286 and 288a to define a separate new sodomy or oral copulation offense, just as it is clear that the Legislature in 1872 intended section 261 to codify the common law offense of rape. The Legislature has never amended section 261 to express a different intent.

In reaching today's holding, the court imposes its own sense of order where none was intended. It is not our role to rewrite statutes, especially criminal statutes, to conform to the court's sensibilities. This is so even if the text and structure of a statute may seem anomalous in the context of related statutes enacted later in time. (See *In re Estate of Calhoun* (1955) 44 Cal.3d 378, 380–387; cf. *Palermo v. Stockton Theatres* (1948) 32 Cal.2d 53, 63 ["[I]n the absence of a constitutional objection it is generally held that the courts have no right to declare a statute obsolete by reason of a supervening change in the conditions under which it was enacted."].)

## CONCLUSION

It may or may not be good policy to have a rape statute that defines multiple offenses, as the other sex crimes statutes do. But such policy decisions are the province of the Legislature. Our court is guided by different considerations. Among them is that we should overrule a statutory precedent only when there is an exceptionally persuasive reason to do so. Another is that the bench, the bar, and the public are entitled to rely on the rationales of our

15

precedents as much as our holdings.  And finally, it is not our role to update an old statute in lieu of giving its text and structure a natural construction.  Because today's opinion is inconsistent with these principles, I respectfully dissent.

**LIU, J.**

**I CONCUR:**

**KRUGER, J.**

Section 261 in 1941 provided:

"Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances:

"1. Where the female is under the age of eighteen years;

"2. Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent;

"3. Where she resists, but her resistance is overcome by force or violence;

"4. Where she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, or by any intoxicating narcotic, or anaesthetic substance, administered by or with the privity of the accused;

"5. Where she is at the time unconscious of the nature of the act, and this is known to the accused;

"6. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce such belief." (§ 261, as amended by Stats. 1913, ch. 122, § 1, p. 212.)

Today, as at the time of White's offense, section 261 provides:

"(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

"(1) Where a person is incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be known to the person committing the act. . . .

"(2)  Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another.

"(3)  Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused.

"(4)  Where a person is at the time unconscious of the nature of the act, and this is known to the accused. . . .

"(5)  Where a person submits under the belief that the person committing the act is someone known to the victim other than the accused, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief.

"(6)  Where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat. . . .

"(7)  Where the act is accomplished against the victim's will by threatening to use the authority of a public official to incarcerate, arrest, or deport the victim or another, and the victim has a reasonable belief that the perpetrator is a public official. . . . "  (§ 261.)


    Section 288a, in relevant part, provides:

"(a)  Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person. [¶] . . . [¶]

"(c)  (1) . . . .

    "(2) (A)  Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on

18

the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years. [¶] . . . [¶]

"(3)  Any person who commits an act of oral copulation where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat, shall be punished by imprisonment in the state prison for three, six, or eight years. [¶] . . . [¶]

"(f)  Any person who commits an act of oral copulation, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act, shall be punished by imprisonment in the state prison for a period of three, six, or eight years. . . . [¶] . . . [¶]

"(g)  Except as provided in subdivision (h), any person who commits an act of oral copulation, and the victim is at the time incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be known to the person committing the act, shall be punished by imprisonment in the state prison, for three, six, or eight years. . . . [¶] . . . [¶]

"(i)  Any person who commits an act of oral copulation, where the victim is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused, shall be punished by imprisonment in the state prison for a period of three, six, or eight years.

"(j)  Any person who commits an act of oral copulation, where the victim submits under the belief that the person committing the act is someone known to the victim other than the accused, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the

19

belief, shall be punished by imprisonment in the state prison for a period of three, six, or eight years.

"(k) Any person who commits an act of oral copulation, where the act is accomplished against the victim's will by threatening to use the authority of a public official to incarcerate, arrest, or deport the victim or another, and the victim has a reasonable belief that the perpetrator is a public official, shall be punished by imprisonment in the state prison for a period of three, six, or eight years." (§ 288a.)

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. White

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 237 Cal.App.4th 1087
**Rehearing Granted**

_____

**Opinion No.** S228049
**Date Filed:** January 19, 2017

_____

**Court:** Superior
**County:** San Diego
**Judge:** Frank A. Brown

_____

**Counsel:**

Raymond Mark DiGuiseppe, under appointment by the Supreme Court, and Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting, Lise Jacobson, Melissa Mandel, Meredith S. White and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Raymond Mark DiGuiseppe
Post Office Box 10790
Southport, NC  28461
(910) 713-8804

Meredith S. White
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9069