Filed 3/25/26  P. v. Kayser CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERIC HANS KAYSER,<br><br>    Defendant and Appellant. | D087608<br><br><br><br>(Super. Ct. No. FVI20000567) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Sarah Oliver, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Bruce L. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Caelle Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Eric Hans Kayser of possession for sale of methamphetamine with a firearm enhancement and possession of methamphetamine while having a loaded, operable firearm. Kayser first contends the trial court erred by failing to instruct the jury on the lesser included offense of simple possession of methamphetamine. Without determining whether there was error, we conclude any error was harmless.

Second, Kayser argues the trial court erred by failing to apply Penal Code section 1170, subdivision (h)(5)(A) and (B),[1] regarding mandatory supervision, after sentencing him to county jail. The People agree, and we accept their concession.

Accordingly, we remand the case for resentencing. Otherwise, we affirm the judgment.

BACKGROUND

On February 25, 2020, law enforcement, including Officer Justin Carty, executed a search warrant on Kayser's residence in Hesperia, California. In the living room, officers found multiple instruments used for cutting or separating narcotics and a metal spoon with a white crystalline substance consistent with methamphetamine. In the office, Kayser had a laptop with wires connected to many surveillance cameras located inside and outside the house. The office closet had an open safe, where law enforcement found: a large bag of methamphetamine, two smaller bags of methamphetamine, a digital scale, a box of clear bags commonly used to package narcotics, an envelope with $400 cash in various denominations, a loaded revolver, and two other firearms. The large bag of methamphetamine weighed 52.66 grams. The revolver belonged to Kayser, and it was operable. Kayser also had $385

---

[1]     Undesignated statutory references are to the Penal Code.

in cash in different denominations in his wallet.  In the master bedroom of the residence, officers found a glass pipe with what appeared to be methamphetamine residue, hypodermic needles that could have been used to inject methamphetamine, syringes or vials containing a clear substance which may have been methamphetamine, and additional ammunition.  The garage had two additional gun safes with several other firearms.  All windows of the residence had nails or screws drilled into them so they could not be opened, and the doors had locks on both sides.

Kayser told police that he locked the windows because he had issues with people breaking in and stealing things.  He admitted to being a methamphetamine user and stated the methamphetamine present was for personal use.  He also gave a small amount of methamphetamine away.  Kayser said he last purchased one ounce, or 28 grams, of methamphetamine approximately two months before, and he uses around six grams per week.  He explained he bought methamphetamine in bulk because he travelled to purchase it.  Kayser said he was unemployed but had money from disability and a settlement, and he withdrew the cash he had from the bank.  He also reported selling or bartering machinery that he stored in his yard.

Law enforcement had conducted surveillance of Kayser's home for one or two hours during the two days prior to executing the warrant.  They did not see anyone coming to or going from the residence during that time.

The People charged Kayser with possession for sale of a controlled substance while personally armed with a firearm (Health & Saf. Code, §§ 11378, 12022, subd. (c); count 1) and possession of a controlled substance while armed with a loaded, operable firearm (Health & Saf. Code, § 11370.1, subd. (a); count 2).

At trial, in addition to explaining the events of February 25, Officer Carty testified that factors indicating drugs are for sale rather than personal use include having larger quantities of narcotics, money in different dollar amounts, digital scales to weigh products, and bags for packing products. A seller's residence often has a complex security system, high fences, good lighting, and other things to protect the home. He further explained that users typically possess less than one gram of methamphetamine, although addicts may possess up to one week's worth of methamphetamine at a time and use up to one gram per day. He testified it would not be common for a user to have 52 grams of methamphetamine. He stated that it is common for drug dealers to use their own product. While the search did not uncover a "pay/owe" sheet that some sellers use, Officer Carty explained that law enforcement does not find one in all sales cases. Based on the evidence, he thought that the evidence indicated that Kayser was selling drugs, not just personally using them.

The trial court instructed the jury on both charges—possession for sale of a controlled substance and possessing a controlled substance while having a loaded, operable firearm. The court did not instruct the jury as to the lesser included offense in count 1 of simple possession of a controlled substance.

The jury found Kayser guilty on both counts and found true the count 1 allegation that he was personally armed with a firearm. The court sentenced Kayser to the middle term of two years on count 1 plus four years for the firearm enhancement, to be served in state prison. The court stayed the sentence on count 2 under section 654.

Following sentencing, California's Department of Corrections and Rehabilitation sent the trial court a letter suggesting that the court review Kayser's commitment to state prison rather than county jail considering

4

section 1170, subdivision (h).  The court did so, issuing a corrected order committing Kayser to county jail.

## DISCUSSION

Kayser contends the trial court erred by:  (1) failing to instruct the jury on possession of a controlled substance as the lesser included offense of possession for sale; and (2) failing to apply section 1170, subdivision (h)(5) after ordering him to serve his sentence in county jail.

A.  *Lesser Included Instruction*

Without deciding whether the trial court erred by failing to instruct the jury on possession of methamphetamine, we conclude that any such error was harmless.

"[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 149, disapproved on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237, 261.)  When the trial court does not provide a sua sponte lesser included offense instruction, we review any error under the standard announced in *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*Breverman*, at p. 165.)  Prejudicial error exists when "it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred."  (*Id.* at p. 149.)  Reasonable probability means " ' "merely a *reasonable chance*, more than an *abstract possibility*." ' "  (*People v. Sandoval* (2015) 62 Cal.4th 394, 422.)  In this analysis, the reviewing court considers "what such a jury is *likely* to have done in the absence of the error."  (*Breverman*, at p. 177.)  "In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there

5

is no reasonable probability the error of which the defendant complains affected the result." (*Ibid.*)

Here, the evidence that Kayser possessed methamphetamine to sell it was very strong. He possessed a large amount of methamphetamine, a digital scale, cutting tools, packing materials, a loaded firearm, and a large amount of cash in different denominations, which Officer Carty explained indicate drug sales. While Officer Carty testified methamphetamine addicts usually possess no more than seven grams of methamphetamine, Kayser possessed at least 52 grams of methamphetamine. Further, Kayser had an extensive security system with cameras inside and outside the home, consistent with drug sales, and the windows in his residence were nailed shut. Considering the entirety of this evidence, the jury was unlikely to have found simple possession of methamphetamine even if the court had provided that instruction.

This is particularly true given that count 2 did not require the sale of controlled substances. The jury could have convicted Kayser only on count 2, which required possession, but not sale, of controlled substances—yet the jury convicted him on both counts. Thus, the concern did not exist that "[a] jury without an option to convict a defendant of a lesser included offense might be tempted to convict the defendant of an offense greater than that established by the evidence instead of rendering an acquittal." (*People v. Eid* (2014) 59 Cal.4th 650, 658.) The jury's conviction of Kayser on the possession for sale count, when it could have convicted him only of possession of methamphetamine while having a loaded firearm, shows that the jury would not likely have convicted him of the lesser included offense in count 1 had it received the instruction.

The strong evidence and conviction on count 2 makes this case unlike those cited by Kayser. In *People v. Hayes* (2006) 142 Cal.App.4th 175, 183, the jury was "presented with an unwarranted all-or-nothing choice between conviction of the charged offense and complete acquittal" and the issue involved the severity of injuries from a battery of a police officer, which the appellate court determined supported a verdict on the lesser included offense. In *People v. Brown* (2016) 245 Cal.App.4th 140, 154–155, the court determined there was prejudice where the jury's only option was to convict of the charged offense, the jury convicted the defendant on a lesser included offense of a different charge, and the Attorney General only argued harmless error based on the conviction of the greater offense.[2] The evidence of sales in *People v. Walker* (2015) 237 Cal.App.4th 111, 117–118, was weaker compared to the evidence of personal use—while the defendant possessed small packages of marijuana and large amounts of cash, he had a medical marijuana card and law enforcement did not find a scale. And the jury there did not have the option of convicting the defendant of a different possession-only offense. (*Id.* at p. 116.)

Any error in the court's failure to instruct on simple possession of methamphetamine was harmless.

B. *Sentencing*

Kayser next contends we should remand for resentencing because the court did not comply with Penal Code section 1170, subdivision (h)(5) when it

---

[2] Since the parties submitted their briefs, the California Supreme Court has disapproved of *People v. Brown, supra*, 245 Cal.App.4th 140, concluding assault was not a lesser included offense of the charged offense, resisting an officer by force or violence. (*People v. Morgan* (2026) 19 Cal.5th 132.)

7

ordered him to commitment in county jail. We accept the People's concession that the trial court erred.

Punishment for a conviction of possession for sale of methamphetamine is governed by section 1170, subdivision (h). (Health & Saf. Code, § 11378.) Section 1170, subdivision (h)(1) provides that punishment shall be by imprisonment in county jail. Although the section 12022, subdivision (c) firearm enhancement directed imprisonment in state prison, section 1170, subdivision (h)(9) required the sentence to be punishable as directed by the underlying offense.[3] Under section 1170, subdivision (h)(5)(A) and (B), a court imposing a sentence under subdivision (h)(1) must "suspend execution of a concluding portion of the term for a period selected at the court's discretion," known as mandatory supervision, unless it "finds, in the interest of justice, that it is not appropriate in a particular case." This section creates "a statutory presumption in favor of the imposition of a period of mandatory supervision in all applicable cases," and, if the court denies mandatory supervision, it must state its reasons on the record. (Cal. Rules of Court, rule 4.415(a), (d).)

Given that the court ordered a term of imprisonment in county jail under section 1170, subdivision (h), it is appropriate to remand for resentencing for consideration of mandatory supervision.

---

[3]   Section 12022, subdivision (c)(2) now provides for imprisonment in state prison as punishment for a violation with a firearm enhancement under that section, not under section 1170, subdivision (h). The People point out that applying this statute retroactively may violate the ex post facto clause. (U.S. Const., art. I, §§ 9, 10; *People v. White* (2017) 2 Cal.5th 349, 360 ["A statute violates the prohibition against ex post facto laws if it . . . increases the punishment for a crime after it is committed"].)

## DISPOSITION

The judgment is reversed and remanded for resentencing consistent with this opinion, section 1170, subdivision (h), and California Rules of Court, rule 4.415.  In all other respects, the judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


RUBIN, J.


HUFFMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.