Filed 5/4/21  P. v. Cerna CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MARTIN CERNA,<br><br>     Defendant and Appellant. | G058730<br><br>(Super. Ct. No. 17NF1464)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert Alan Knox, Judge.  Affirmed.

David Evan Wohl for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant was convicted of sexually abusing his stepdaughter over a six-year period and sentenced to 53 years to life in prison. He makes three arguments on appeal. First, he argues the trial court erred by allowing the prosecution to add new counts to the information at the beginning of trial. But these counts were supported by evidence presented at the preliminary hearing. While defendant suggests the prosecution added these counts in retaliation for his exercise of constitutional rights, this is unsupported by the record.

Second, one of the Penal Code sections that defendant violated was amended during the relevant time period.[1] Defendant contends his sentence should have been based on the prior version of the statute rather than the amended version, which mandated a longer prison sentence. He asserts his sentence under the amended statute constitutes a violation of ex post facto principles. We are not persuaded. The record leaves no reasonable doubt that defendant's conviction on this count was based on acts that occurred after the statute was amended.

Finally, defendant maintains the trial court improperly admitted expert testimony on Child Sexual Abuse Accommodation Syndrome (CSAAS). We disagree. Though defendant suggests that CSAAS evidence should be categorically inadmissible, our Supreme Court has held otherwise. Such evidence "is admissible to rehabilitate [a] witness's credibility when the defendant suggests that the child's conduct after the incident . . . is inconsistent with his or her testimony claiming molestation." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301 (*McAlpin*).) Here, CSAAS evidence was relevant to understanding the victim's behavior in response to defendant's abuse.

For these reasons, we affirm the trial court's judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

# I

## FACTS

### A. *Underlying Facts*

L.G. was born in April 2001. Her mother began dating defendant when L.G. was around six years old, and soon after they moved into defendant's mobile home. Her mother and defendant had two sons who were born in 2011 and 2013.

Defendant started sexually abusing L.G. when she was eight years old, and he continued to abuse her until she was 14 and a half. L.G. testified at trial that the abuse occurred weekly, and it included defendant digitally penetrating her vagina, licking her vagina, and touching her breasts over and under her clothes. She also testified that defendant once tried to have sexual intercourse with her when she was 10 years old. He stopped when she began crying due to the pain.

L.G. disclosed the abuse to her mother when she was 15. The abuse was eventually reported to the police and defendant was arrested.

### B. *Amended Information*

The prosecution filed a felony complaint against defendant in May 2017. An information was filed in February 2019, alleging five counts:

1. forcible lewd act on a child under 14 between April 1, 2009 and March 31, 2011 (§ 288, subd. (b)(1));

2. aggravated sexual assault of a child (oral copulation) between April 1, 2011 and March 31, 2015 (§ 269, subd. (a)(4));

3. aggravated sexual assault of a child (sexual penetration) between April 1, 2011 and March 31, 2015 (§ 269, subd. (a)(5));

4. lewd act upon a child between April 1, 2015 and March 31, 2017 (§ 288, subd. (c)(1)); and

5. aggravated sexual assault of a child based on rape (§ 269, subd. (a)(1)).

At the beginning of trial, prior to jury selection, the prosecution moved to amend the information to (a) delete count 5, (b) renumber counts 2 through 4 as counts 4 through 6 and revise certain dates, and (c) add two new counts (counts 2 and 3). Prior to ruling, the court asked defendant if he needed a trial continuance or additional time to prepare a defense if the amendment were allowed. Defendant declined. The court also inquired whether defendant previously had rejected a plea offer. Defendant stated he had rejected a 10-year plea offer and he would reject the same offer if it were made after the information was amended. The court granted the prosecution's motion, and the amended information contained the following counts:

1. forcible lewd act on a child under 14 between April 1, 2009 and March 31, 2011 (§ 288, subd. (b)(1));

2. oral copulation with a child 10 years or younger between April 1, 2011 and March 31, 2012 (§ 288.7, subd. (b));

3. sexual intercourse with a child 10 years or younger between April 1, 2011 and March 31, 2012 (§ 288.7, subd. (a));

4. aggravated sexual assault of a child (oral copulation) between April 1, 2012 and March 31, 2015 (§ 269, subd. (a)(4));

5. aggravated sexual assault of a child (sexual penetration) between April 1, 2012 and March 31, 2015 (§ 269, subd. (a)(5)); and

6. lewd act upon a child between April 1, 2015 and March 31, 2017 (§ 288, subd. (c)(1)).

*C. Trial and Verdict*

Numerous witnesses were called at trial, including L.G., her mother, and defendant, among others. The prosecution also called forensic psychologist Dr. Jody Ward to provide expert testimony on CSAAS, which is a group of behaviors that explain

4

a child's reaction to sexual abuse perpetrated by someone close to the child. Dr. Ward gave no opinion as to defendant's guilt or whether L.G. suffered from CSAAS.

After each side had presented its case, the jury found defendant guilty on all counts except for count 3. He was sentenced to an aggregate term of 53 and 2/3 years to life, comprised of a consecutive eight-year term for count 1, a consecutive eight-month term for count 6, and consecutive terms of 15 years to life for each of counts 2, 4, and 5.

Defendant makes three challenges on appeal. First, he contends the trial court erred by allowing the prosecution to amend the information. Second, as to count 1, section 288, subdivision (b)(1), was amended during the relevant time frame to increase the sentencing triad. Defendant claims his sentence under the amended statute violates the ex post facto clauses of the federal and state Constitution. Third, he maintains Dr. Ward's CSAAS testimony was inadmissible.

## II

## DISCUSSION

### A. Amended Information

Defendant argues the amendment of the information violated his due process rights in two different ways. Neither argument is convincing.

First, he maintains he was deprived of the right to notice of the charges against him. "Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*People v. Jones* (1990) 51 Cal.3d 294, 317.) "[T]he information has a 'limited role' of informing defendant of the kinds and number of offenses, 'the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript,' which represents 'the touchstone of due process notice to a defendant.'" (*Id*. at p. 312.) "'So long as the evidence presented at the preliminary hearing supports the number of offenses charged against defendant and

5

covers the time frame[s] charged in the information, a defendant has all the notice the Constitution requires.'" (*Ibid.*)

Defendant had sufficient notice. The amended information only added two new charges: oral copulation with a child 10 years or younger (count 2) and sexual intercourse with a child 10 years or younger (count 3). Both charges were supported by evidence presented at the preliminary hearing. As to count 2, a detective testified at the preliminary hearing that L.G. had revealed during interviews that incidents of oral copulation occurred when she was 10 years old:

Q: "And how about when she was [10] years old, any incidents of oral copulation?"

A: "Yes. She described the oral copulation and kissing continuing."

Q: "And that oral copulation -- would that be the defendant licking her vagina?"

A: "Yes."

Q: "Did she describe any type of physical force used during the oral copulation incidents?"

A: "The pinning down to start when he would kiss her; and then, when he would go down on her legs, he would separate her legs and then -- yeah."

Q: "And then how about when she was 11 years old? What did she describe?"

A: "I think it was that time span. It was from [age] 8 on to 15. It was oral copulation or – I'm sorry – the kissing, the rubbing, oral copulation started."

Although defendant was not convicted on count 3, evidence of sexual intercourse was presented at the preliminary hearing. When asked about instances of abuse that occurred when L.G. was 10, a detective testified that L.G. described "one incident where [defendant] tried to put his penis in her vagina, and . . . how he was

6

completely on top of her holding her down with one hand, and then used the other hand to remove her underpants."

Next, defendant asserts the new counts were added by the prosecution in retaliation for his revocation of his time waiver. Prior to the amendment, his potential sentence was 45 years to life. After the new counts were added, his potential sentence was 70 years to life. Defendant's assertion is based on the prosecution's explanation for the timing of the amendment: "[W]hen the defendant revoked his time waiver, it created a scheduling conflict, so I stepped in to handle this case. By the time I reviewed the case – and knowing there was no time waiver, I wanted to get the case up and running as fast as possible. However, when I had looked at the case, my personal view of how the case should be filed was different than the prior DA, so I wanted to make those changes." Defendant asks us to infer prosecutory vindictiveness from this statement.[2]

"The due process clauses of the state and federal Constitutions prohibit prosecutors from punishing criminal defendants for exercising their constitutional rights. . . . 'In vindictive prosecution cases it is the Government's attempt or threat to "up the ante" by bringing new or more serious charges in response to the exercise of protected rights that violates the due process guarantee.'" (*Short v. Superior Court* (2019) 42 Cal.App.5th 905, 914-915.) "A vindictive prosecution claim may be established '"by producing direct evidence of the prosecutor's punitive motivation"'. . . [Citation.] In the absence of direct evidence of vindictiveness, a criminal defendant may raise a rebuttable presumption of vindictiveness '"by showing that the circumstances

---

[2] Defendant did not object on this ground at trial. Generally, "[w]e will not address arguments raised for the first time on appeal." (*In re Campbell* (2017) 11 Cal.App.5th 742, 756.) However, defendant contends his counsel was constitutionally ineffective for failing to make this objection. To prevail, defendant must show his counsel's performance was deficient. (*In re Gay* (2020) 8 Cal.5th 1059, 1073.) We review the merits of defendant's argument to determine whether counsel's failure to object on this ground constitutes deficient representation.

establish a 'reasonable likelihood of vindictiveness.'"' [Citation.] When a presumption of vindictiveness exists, 'the burden shifts to the government to present "objective evidence justifying the prosecutor's action."'" (*Id*. at p. 915.)

The presumption of vindictiveness is generally applied in the posttrial context. (See *People v. Michaels* (2002) 28 Cal.4th 486, 515; see also *People v. Halim* (2017) 14 Cal.App.5th 632, 644.) It does not typically apply before trial has commenced. "In the pretrial setting, there is no presumption of vindictiveness when the prosecution increases the charges or, as here, the potential penalty. [Citations.] Rather, the defendant must 'prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something the law plainly allowed him to do.'" (*People v. Jurado* (2006) 38 Cal.4th 72, 98.)

For example, in *People v. Grimes* (2016) 1 Cal.5th 698 (*Grimes*), the defendant claimed he "was denied due process when the [new] district attorney decided to reverse the decision of the prior district attorney and to seek the death penalty unless defendant pleaded guilty to the charge of murder with special circumstances." (*Id*. at pp. 735-736.) The "[d]efendant argue[d] his right to due process was violated because the district attorney sought the death penalty after [the] defendant refused to plead guilty, thereby punishing him for exercising his right to a jury trial." (*Id*. at p. 736.)

Our Supreme Court rejected the defendant's argument. "Absent proof of vindictiveness or other improper motive, increasing the charges or punishment when a plea bargain is refused does not constitute unconstitutional punishment or retaliation for the exercise of a defendant's legal rights. . . . The district attorney was free to change the decision made by his predecessor not to seek the death penalty, and that decision does not raise 'a presumption of vindictiveness.' [Citation.] 'A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.'" (*Grimes*, *supra*, 1 Cal.5th at p. 736.)

8

Here, defendant has not shown any evidence that would support a finding of vindictiveness. Similar to *Grimes*, a new prosecutor was assigned in this case. He determined that based on the evidence the new counts should be charged. The counts were added while this case was effectively still in the pretrial phase, as the amendment was requested before jury selection began. The court even inquired whether defendant needed a trial continuance. While the prosecutor referenced the time waiver in explaining the timing of the amendment, there are no indications that the new counts were added in retaliation. Rather, from the record before us, it appears the prosecutor referenced the time waiver to explain why the case had been recently reassigned to him. Though the new counts increased defendant's potential sentence, the prosecutor had discretion to deviate from his predecessor's initial decision without raising a presumption of vindictiveness. (*Grimes*, *supra*, 1 Cal.5th at p. 736.) Absent the presumption, the prosecutor's statement alone does not provide sufficient evidence to support a finding of vindictive intent.

### B. Sentence for Count 1

On count 1, defendant was convicted of violating section 288, subdivision (b)(1), between April 1, 2009 and March 31, 2011. This subdivision was amended on September 9, 2010. Prior to its amendment, a violation of the subdivision was punishable by imprisonment for three, six, or eight years. (Stats. 2004, ch. 823, § 7, pp. 6294-6295.) The amendment increased the punishment to five, eight, or 10 years. (§ 288, subd. (b)(1).) Defendant was sentenced under the amended statute to a middle term of eight years. He contends it is unclear whether the jury's conviction on count 1 was for acts that occurred after the subdivision was amended. As such, he maintains the trial court's sentence on count 1 violates the ex post facto clauses of the United States and California Constitutions and that he should be sentenced to six years instead of eight. We disagree.

9

The federal and state Constitutions contain provisions prohibiting ex post facto laws. Both clauses are interpreted the same way. (*People v. Riskin* (2006) 143 Cal.App.4th 234, 244; *People v. Hiscox* (2006) 136 Cal.App.4th 253, 257, fn. 5.) A statute violates these provisions "if it punishes as a crime an act that was innocent when done or increases the punishment for a crime after it is committed." (*People v. White* (2017) 2 Cal.5th 349, 360.)

Here, the jury was not asked to determine whether any of the conduct underlying count 1 occurred after the effective date of the amendment. As such, its verdict "'cannot be deemed sufficient to establish the date of the offense[] unless the evidence leaves no reasonable doubt' that the conviction was based on an incident that occurred on or after" September 9, 2010. (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1306.) We find the evidence here shows beyond a reasonable doubt that the jury's verdict on count 1 was based on acts that occurred after this date.

The evidence presented at trial did not focus on specific acts of abuse. Specific acts were referenced to establish plaintiff's age when defendant first began abusing her and when the last incident of abuse occurred. But the bulk of the evidence was generalized descriptions of abusive acts that defendant generally inflicted on L.G. between the ages of eight and 14. Count 1 covered April 1, 2009 to March 31, 2011, i.e. the time period when L.G. was eight and nine years old. The record shows defendant started abusing L.G. when she was eight, including grabbing her breasts and digitally penetrating and licking her vagina. These acts continued when she was nine years old. The record also shows that defendant abused L.G. once a week from when she was eight years old until she was 14. For example, L.G. testified to this frequency of abuse when describing defendant's last abusive act, which occurred the same day he informed her of her grandfather's death.

Q: "When you woke up, was he licking your vagina at that point?

A: "Yes."

10

[¶] . . . . [¶]

Q: "Do you remember telling Detective Pewsey . . . that the defendant licked your vagina for about [10] seconds until you realized what was going on, and you were in shock when you realized what was going on, and then you pushed him off?"

A: "Yeah. That's when I woke up."

[¶] . . . . [¶]

Q: "This had been happening to you every week since you were 8 years old?"

A: "Yes."

Similarly, L.G. testified that defendant digitally penetrated her vagina on a weekly basis starting from when she was eight years old.

As to count 1, it is clear the jury believed defendant sexually abused L.G. weekly when she was eight and nine years old. They were given an unanimity instruction for count 1. They could only find defendant guilty if they either agreed on a specific act committed by defendant or that "defendant committed all the acts alleged to have occurred during the time periods alleged for [the] count." Based on the evidence and argument presented at trial, the jury undoubtedly based its count 1 verdict on the latter.

As explained above, the evidence did not focus on a specific act. Nor did the prosecution identify any discrete acts underlying count 1. Rather, during closing argument it explained count 1 was based on defendant's weekly abuse of L.G.: "[L.G.] testified that when her mother would go into the shower, the defendant, more than once a week, from 8 years old to 14 years six months, he did this. He would pick her up sometimes, throw her on the bed, put his hands over her arms, get on top of her, straddle her, fondle her breasts, and touch her vagina and try to kiss her. And orally copulated her."

Since the jury was not presented any specific instances of abuse for count 1, they must have found that defendant committed "all the acts alleged to have occurred

11

during the time period[].” In other words, as to count 1, they found that defendant sexually abused L.G. weekly when she was eight and nine years old, which lasted from April 1, 2009 to March 31, 2011. As the abuse occurred weekly, there is no reasonable doubt that defendant's conviction on count 1 included acts that occurred in the six-month period between September 9, 2010 and March 31, 2011, after the amendment of section 288, subdivision (b)(1). Consequently, no ex post facto violation occurred.

### C. CSAAS Evidence

Defendant makes three arguments concerning the CSAAS evidence, which are unpersuasive.[3] Before analyzing them, we summarize the relevant testimony.

Dr. Ward testified that there are five components to CSAAS. First, secrecy refers to the fact that all sexual abuse occurs in secret and that children tend to keep it secret for long periods of time. Second, helplessness explains why children are unable to get out of abusive situations. They typically rely on their abusers for essentials such as shelter and food. Further, they often have emotional attachments to their abusers that makes it difficult to report the abuse. Third, entrapment and accommodation occur because the child usually does not report the abuse right away, which allows the abuse to continue. The child may acquiesce to the abuse and try to act normal because they fear their life will be disrupted if the abuse is disclosed. Fourth, there may be a delayed and unconvincing disclosure of the abuse. Children generally wait until adulthood to report abuse. Inconsistencies in disclosure are expected because children primarily forget or suppress the memories as a coping mechanism, which interferes with their ability to later recall them. Finally, retraction or recantation may occur as the victim begins to experience turmoil following disclosure and tries to undo the changes.

---

[3] None of these arguments were made during trial, but defendant again claims his counsel's failure to object on these grounds constituted ineffective assistance of counsel.

12

Defendant first argues that CSAAS evidence is only admissible to counter a "myth" or "misconception" in the evidence, such as explaining why the victim waited to report. While defendant admits he attacked L.G.'s inconsistent accounts over time (i.e. delayed and unconvincing disclosure), he claims there were no grounds for allowing Dr. Ward's testimony on the other CSAAS components.

CSAAS evidence "is admissible to rehabilitate [a] witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300-1301.) We review the trial court's decision to admit CSAAS evidence for an abuse of discretion. (*Id*. at p. 1299.) "'An abuse of discretion occurs only if the reviewing court, considering the applicable law and all of the relevant circumstances, concludes that the trial court's decision exceeds the bounds of reason and results in a miscarriage of justice.'" (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292.)

Since defendant admittedly attacked L.G.'s inconsistent accounts, it was reasonable for Dr. Ward to describe all five components of CSAAS. Even if the other four components were not directly at issue, it was reasonable for Dr. Ward to provide a complete explanation of CSAAS for the jury. Her testimony on the other four components provided useful context for the component at issue and understanding child abuse generally. Further, defendant has not shown any prejudice caused by Dr. Ward's explanation of the other components, nor is any prejudice apparent. Thus, no miscarriage of justice occurred.

Moreover, many of the other components of CSAAS were implicated at trial. For example, defendant argued it was "hard to believe" that no one from L.G.'s family "noticed anything out of the ordinary for six years." Dr. Ward's testimony on

13

secrecy was relevant to this issue. Similarly, defendant also pointed out that L.G. chose to stay at home alone with defendant when her mother and brothers visited L.G.'s sick grandfather in Mexico in 2015. During cross-examination defendant questioned why she "chose to stay back with the man who was abusing [her]?" And during closing argument, he contended that she could have chosen to stay "because she wasn't being molested." Dr. Ward's testimony on helplessness and entrapment and accommodation addressed this argument.

Second, defendant argues CSAAS evidence is no longer necessary in child sexual abuse trials because the public's understanding of the issue has increased dramatically in the last few decades. As examples, he highlights several well-publicized scandals over the years that have furthered public knowledge, including those involving the Catholic church, the Boy Scouts of America, and Pennsylvania State University football coach Jerry Sandusky. But our Supreme Court has already held that CSAAS evidence is admissible in appropriate contexts, as explained above. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300-1301.) We are bound by their decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Further, "'[a] jury need not be wholly ignorant of the subject matter of the [expert] opinion in order to justify its admission . . . . Instead, . . . even if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would "assist" the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness' [citation].'" (*McAlpin*, *supra*, 53 Cal.3d at pp. 1299-1300.) Though general awareness of child sexual abuse has increased over time, we are not persuaded the public's understanding of its intricacies has reached a point where CSAAS evidence does not assist a jury. Indeed, most jurisdictions allow CSAAS evidence to be admitted. (*People v. Munch* (2020) 52 Cal.App.5th 464, 471-472.)

14

Finally, defendant asserts CSAAS evidence lacks scientific reliability. Again, our Supreme Court has already determined this evidence is admissible. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300-1302.) This argument was also recently rejected by our colleagues in the Second District, and we agree with their analysis: "The CSAAS evidence [the defendant] challenges has been ruled to be properly admitted by the courts of this state for decades. [Citations.] [The defendant's] claim regarding a requirement of scientific reliability testing for its admissibility is not meritorious because courts have long recognized the well-established relevance, necessity, reliability, and importance of this evidence." (*People v. Munch*, *supra*, 52 Cal.App.5th at p. 472.)

III

DISPOSITION

The judgment is affirmed.


                                                MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.

15